CHARLES A. ROGERS and H. M. ROGERS;
C. A. REINHARDT and MARY REINHARDT;
JOHN O. REINHARDT and LUCILLE I.
REINHARDT; and GARY R. HOLMSTROM
and SUSAN T. HOLMSTROM *v.*
DEPARTMENT OF REVENUE

Charles L. Johnson, Attorney at Law, Salem, represented plaintiffs.

Gerald F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered June 27, 1975.

CARLISLE B. ROBERTS, Judge.

By stipulation of the parties, the above-entitled cases were consolidated for trial. The plaintiffs in each suit are husband and wife, owners of five acres of "unroaded," unimproved forest land in Washington County, containing immature marketable species of timber. They seek reinstatement of the statutory special valuation of their timber and timberland provided by ORS 321.605 to 321.680 (the Western Oregon Ad Valorem Timber Tax Act) and have appealed from the defendant's orders as follows: No. 886, appealed from Order No. VL 74-138 (dated May 17, 1974), on account

of the tax year 1972-1973; No. 889, appealed from Order No. VL 74-210 (dated May 24, 1974), for the tax years 1972-1973 and 1973-1974; No. 890, appealed from Order No. VL 74-225 (dated May 24, 1974), for tax years 1971-1972, 1972-1973 and 1973-1974; and No. 891, appealed from Order No. VL 74-227 (dated May 24, 1974), for tax years 1971-1972, 1972-1973 and 1973-1974.

The property in case No. 886 was described as Assessor's Account Nos. 25222, 00326, 03904, all in Lot 19; in No. 889, the forest land was "five acres of land described as Sec. 22, T2S, R2W, Tax Lot 18;" in No. 890, it was "5 acres of land described as Sec. 22, T2S, Lot 16;" and in No. 891, "four acres of a five-acre tract described as Tax Lot 8, Sec. 22, T2S, R2W."

In each instance, the plaintiffs had duly filed for a designation of their respective tracts as "forest land" pursuant to ORS 321.618, utilizing the Department of Revenue's Form PT-C-24 (Rev. 12-69). These were supplied to the plaintiffs upon their telephoned request to Mr. John G. Krautscheid (Farm Appraiser during the last 12½ years in the Department of Assessment and Taxation, Washington County).

On the forms utilized at that time,[1] the following questions were asked:

"10. Have you previously divided and sold property which you have owned in the County? Yes     No

"11. Have you divided the above-described property or any portion of it into smaller parcels since you acquired it? Yes     No

What was your purpose in dividing it?

"12. Have you filed a plat with the County

[1] The form used in these cases was substantially amended by a subsequently issued Form DR A&A-C-24 (Rev. 4-74).

which includes the above-described property or any part of it? Yes    No"

Notice must be taken of the words "Have you * * *" found in each question, clearly limiting their scope to the activities of the individual applicant. In each instance, the plaintiffs correctly answered "No." Upon receipt of the completed application forms, the property was designated forest land by the Director of the Department of Assessment and Taxation hereinafter referred to as the "county assessor"), by and through his duly authorized staff member, on the assessment and tax rolls for the years enumerated.

The county assessor's approval of the plaintiffs' applications was regularly entered in the assessment roll. In accordance with office practice, the plaintiffs were never formally notified thereof. Assessor and plaintiffs were aware of the provisions in ORS 321.-618(4), printed on the application form:

"* * * The application shall be deemed to have been approved [by the county assessor] unless, within three months of the date such application was delivered to the assessor, he shall notify the applicant in writing of the extent to which the application is denied."

Plaintiffs, after three months, properly concluded that the applications had been approved.

A reading of the sections of the Western Oregon Ad Valorem Timber Tax Law shows that the county assessor is required to exercise judgment in approving or disapproving the applications. There is a continuing requirement upon him to remove the classification when he deems it necessary (ORS 321.619). The form prepared for the use of assessor and applicants by the defendant was apparently intended to obtain information necessary to the assessor under ORS 321.618. The pertinent statute reads, in part:

"(2) The application shall be made upon forms

prepared by the Department of Revenue and supplied by the county assessor, and shall include the following:

"* * * * *

"(g) Whether the land has been subdivided or a plat has been filed under ORS 92.100.

"* * * * *

"(3) It shall be conclusively presumed that land is not being held or used for the predominant purpose of growing and harvesting trees of marketable species if * * * it is subject to a plat filed under ORS 92.100. Otherwise, the determination shall be made with due regard to all relevant evidence and without any one or more items of evidence necessarily being determinative."

The applications for designation of land as forest land were filed by plaintiffs to begin with the assessment year 1971 or 1972. The undisputed testimony of Mr. Krautscheid was that in March 1973, or just prior to that month, the Washington County Assessor attended a meeting of county assessors where it came to his attention that, among his colleagues, prior platting of given land was deemed fatal to an application for designation of the land for special taxation under ORS 321.605 et seq., because of the "conclusive presumption" established in subsection (3) of ORS 321.618 that such land "is not being held or used for the predominant purpose of growing and harvesting trees of marketable species * * *."

Upon his return from the meeting, the Washington County Assessor ordered an examination to be made by Mr. Krautscheid to determine whether any of the land in Washington County, previously platted, had been given special tax treatment as forest lands. It was then discovered that the plaintiffs' seller, Mr. Goddard, had platted the subject property before the sales to the plaintiffs. Plaintiffs had not been aware of

this fact. Mr. Krautscheid testified that the property was "not platted as of necessity" under the requirements of Washington County, since no lots created by the plat contained less than five acres. See ORS 92.-044(1). Mr. Goddard, according to Mr. Krautscheid, had adopted the platting method in order to avoid the inconvenience of describing the land by metes and bounds, the use of which had vexed him on some prior occasion. Mr. Krautscheid indicated awareness of the filing of the plat but he himself had relied upon the wording of the question in the Department of Revenue's form:

> "12. Have *you* filed a plat with the County which includes the above-described property or any part of it? Yes     No" (Emphasis supplied.)

He approved the plaintiffs' applications because (a) no platting was legally required by Washington County for divisions into lots of not less than five acres, and (b) he believed that the question asked on the form related to a legal requirement: whether *the purchaser* of the five acres had actually done the platting. The plaintiffs testified that this was also their understanding of the printed question.

Plaintiffs seek to estop the county assessor from revoking the applications filed in good faith under ORS 321.618.

■ In the usual case, a plaintiff seeking benefits of estoppel must plead the facts on which estoppel arises. *Cody v. Ins. Co. of Oregon,* 253 Or 587, 454 P2d 859 (1969). Estoppel need not be especially pleaded as such where the matter constituting the estoppel appears on the face of the pleading. *Brandtjen & Kluge v. Biggs,* 205 Or 473, 484-485, 288 P2d 1025 (1955).

■ Elements of "equitable estoppel" may include a false representation. *Earls et ux v. Clarke et al,* 223

Or 527, 355 P2d 213 (1960). However, a line of Oregon cases has established a different rule in the case of "quasi estoppel" where an incorrect or erroneous form has been given by a county assessor to a taxpayer who has thereby been misled in filing an application for a tax exemption. *See Johnson v. Commission*, 2 OTR 504 (1967), *aff'd* in *Johnson v. Tax Commission*, 248 Or 460, 435 P2d 302 (1967); *Pilgrim Turkey Packers v. Dept. of Rev.*, 261 Or 305, 493 P2d 1372 (1972); and *Uniroyal v. Dept. of Rev.*, 5 OTR 29 (1972). *See also Cascade Manor, Inc. et al v. Dept. of Rev.*, 5 OTR 482 (1974). As stated in the last-mentioned case, at 487-488:

> "* * * However, in neither the *Johnson* case nor the *Pilgrim Turkey Packers* case, was there any hint that the misrepresentation was made with the intention to mislead; this element of equitable estoppel was disregarded by the Supreme Court. It is also obvious that access to the pertinent law was available to the parties in each instance but the court appears to have waived this third element of estoppel, urged by defendant. (This may explain the use of the term 'quasi estoppel,' used by the judge of the Oregon Tax Court in the decision of *Johnson v. Commission*, 2 OTR 504 (1967), *aff'd* at 248 Or 460 (1967).)"

In addition to the act of the Department of Revenue and the county assessor in supplying a form to the taxpayers which would mislead a reasonable person as to the requirement for exemption, another ground for estoppel was presented in this case by the provision of ORS 321.618(4):

> "The application shall be approved by the assessor, and he shall designate the land as forest land, except as to land which he finds is not properly classifiable as forest land. The application shall be deemed to have been approved unless, *within three months of the date such application was*

*delivered to the assessor,* he shall notify the applicant in writing of the extent to which the application is denied." (Emphasis supplied.)

The plaintiffs testified that they were cognizant of this provision of the law, inasmuch as it was printed on the reverse side of the application forms which they executed. They reasonably relied upon this provision of the law and the fact that the county assessor took no steps to revoke the forest land classification approved for 1971-1972 and the following years until about March 1973.

ORS 321.619 provides that:

"(1)(a) When land has once been designated as forest land as the result of an application being filed therefor it shall be valued as such until: * * * (D) removal of the designation by the assessor upon discovery that the land *is no longer* forest land.

"(b) Within 30 days after removal of a designation of forest land, the assessor shall so notify in writing both the taxpayer and the Department of Revenue and shall specify the reasons for the removal." (Emphasis supplied.)

The provisions of ORS 321.618(4) and of 321.619, read together, lead the court to find that, apart from fraud, bribery or other illegal acts, the county assessor, under the facts of this case, could revoke a once-approved classification of forest land only prospectively. The grounds for removal of the classification (A)-(D), inclusive, all appear to be prospective only. When the three-month period provided by ORS 321.-618(4) terminated, the taxpayers were entitled to rely upon the fact that the time for rejection had expired and the assessor had not given written notification of denial of the applications in whole or in part.[2]

───

[2] The testimony shows that if the plaintiffs had knowingly been denied approval of their written claims, for the reason

Although plaintiffs have made a good case for estoppel in the pattern of *Johnson* and of *Pilgrim Turkey Packers, supra,* they offered nothing to overcome the legal effect of the conclusive presumption found in ORS 321.618(3). In the court's view, the decision rests, not on estoppel, but on a correct reading of that provision.

A decision for the plaintiff is not obviated by the language of ORS 321.618(3):

> "*It shall be conclusively presumed* that land is not being held or used for the predominant purpose of growing and harvesting trees of marketable species if the application so states or if *it is subject to a plat* filed under ORS 92.100. Otherwise, the determination shall be made with due regard to all relevant evidence and without any one or more items of evidence necessarily being determinative." (Emphasis supplied.)

A "conclusive presumption" has a special status in the law. Once certain facts are proved, an adversary is not allowed to dispute the conclusion or presumption the law raises from those facts. The trier of the fact is required to find in accordance with the presumption. "In a real sense a conclusive presumption is not a presumption at all, but a rule of law. *See*

---

that the subject property had been platted, they would have been able to apply successfully for classification and partial tax exemption under the Western Oregon Small Tract Optional Tax, ORS 321.705. While that measure also provides that the application shall show whether the land has been subdivided or a plat has been filed under ORS 92.120 (see ORS 321.730), the testimony indicated the State Forester would have approved the classification under the facts of this case. Subsequently, their property was placed under that Act. No reliance has been placed on this testimony with respect to the present decision, since no argument was made as to its legal effect. No pleadings were filed or representations made to the court as to the effect of *Wood v. Ore. St. Bd. of Forestry,* 5 OTR 193 (1973), in this situation.

McCormick, Evidence (2d Ed. 1973) § 342." Oregon State Bar CLE, "Evidence," § 3.13. *See Ritchie v. Thomas et al*, 190 Or 95, 105, 224 P2d 543 (1950), and ORS 41.360.

■ However, the conclusive presumption must be based (a) on some justification of public policy or (b) on a rational connection between the fact proved and the fact presumed. As stated in *State Land Board v. United States*, 222 Or 40, 50, 352 P2d 539 (1960) (reversed on other grounds in *United States v. Oregon*, 366 US 643, 81 S Ct 1278, 6 L Ed2d 575 (1961)):

"* * * But statutes declaring certain facts to be even prima facie or rebuttable evidence of other facts can violate constitutional guaranties of due process where there is no rational connection between the facts proved and the ultimate fact presumed. (Citations omitted.)

"* * * * *

" '* * * Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. * * *' "

The lack of a rational connection between the fact proved and the fact consequently presumed is readily apparent in the "conclusive presumption" here considered. A requirement of ORS 321.618(2)(c) is that "the land is being held or used for the predominant purpose of growing and harvesting trees of marketable species." The county assessor is instructed by subsection (3) of the section that "it shall be conclusively presumed that land is not being held or used for the predominant purpose of growing and harvesting trees of a marketable species if * * * it is subject to a plat filed under ORS 92.100. * * *"

ORS 321.618(3), by its language, covers and includes *any* plat, whether required by law or whether the result of a foible of an owner; whether filed during a land boom forty years ago or last week; whether developed or undeveloped; whether filed by a stranger or by the applicant for a forest land designation.

A transfer of platted land to a second party makes the presumption untenable in that the mere act of purchasing platted land cannot be said, in and of itself, to represent conclusively the buyer's intention as to its use.

There is nothing in nature which prevents platted land from being useful forest land. The legislative policy to nurture and exploit all feasible forest land is explicit in ORS chapter 321. The presumption here conflicts with the policy. If the statutory provision actually read, as interpreted by the drafter of the application form and by the county assessor, that a denial follows if the applicants for exemption have themselves platted the land, a proper inference can be made that the applicants lacked a bona fide intention of growing forest crops. However, in the present instance, the testimony is clear that the seller who platted the land and the plaintiff purchasers had no intention of disturbing the property's forest land potential. This in itself may not be enough to upset the presumption but it should be taken into account that in countless instances land is platted by developers and, for one reason or another, no development has ever followed, over a period of many years. This problem has been given legislative recognition in ORS 92.205-92.245. The first section of this statute relating to undeveloped subdivisions, ORS 92.205, reads in part:

"(1) The Legislative Assembly finds that many subdivisions for which plats have been approved and recorded have not been developed and that many such subdivisions were approved prior to the

adoption of a comprehensive plan, zoning regulations and ordinances and modern subdivision control standards by the jurisdiction within which the lands described in the subdivision plats are situated."

The 1973 act thereupon provides for the modification or the vacation of nonconforming, undeveloped subdivisions.

■ The effect of the conclusive presumption in ORS 321.618(3) is to deprive persons in the position of the plaintiffs of a right under the statutes which the overall intent of the legislation was designed to give to them. The conclusive presumption, therefore, effects an unintended discrimination between individuals in the class of persons for whom the benefits of the statute were enacted.

■ The foregoing considerations, proving a lack of rational connection between (a) the fact of platting and (b) the "fact" of the owner's intentions as to silviculture, render inoperable the presumption's legal classification as "conclusive." The alleged presumption cannot be determinative of the facts in these cases. As in the provisions of ORS 321.705, the assessor should give consideration to the fact of platting as part of the relevant evidence in making his determination to approve or not to approve an application. The presumption continues to place the burden of proof on the applicant, but the existence of a plat is not conclusive as to its significance for purposes of the application.[9]

---

[9] The court takes note that under Or Laws 1973, ch 237, § 1, amending ORS 321.618, the words formerly found in subsection (3) of the section, "It shall be conclusively presumed," were deleted by House Bill 2304. This measure was considered by the legislature at approximately the time the county assessor was rescinding his approval of the applications filed in the present suits.

Defendant's Orders VL 74-138, VL 74-210, VL 74-225 and VL 74-227 are set aside and are held for naught and the approval of the county assessor of the plaintiffs' applications for forest land designations shall be reinstated. The county assessor shall assess the subject properties for the assessment years under consideration pursuant to ORS 321.605 et seq., i.e., in case No. 886, 1972-1973; in case No. 889, 1972-1973, 1973-1974; cases Nos. 890 and 891, 1971-1972, 1972-1973, 1973-1974.

The county assessor and the county tax collector shall make such adjustments to the assessment and tax rolls as are made necessary by this decision. If any taxes have been paid on account of the subject properties in excess of the amount that should have been paid if the plaintiffs' properties had been taxed as forest land, refund shall be made of taxes and interest to the individual taxpayers, plaintiffs herein, pursuant to ORS 311.806 and 311.812.

Each party is charged with his or its costs and disbursement.